NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AKHTAR NADHMAN SHAMS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>Defendants. | Civil Action No. 24-4828 (RK)<br><br><u>**OPINION**</u> |

**<u>KIRSCH, District Judge</u>**

**THIS MATTER** comes before the Court upon a Motion to Dismiss (ECF No. 17) filed by the Office of the United States Attorney on behalf of Defendant United States Department of State; Defendant Marco Rubio, the United States Secretary of State; Defendant U.S. Embassy in Islamabad, Pakistan; and Defendant Natalie A. Baker, Chargé d'Affaires *ad interim* (diplomat in the absence of an ambassador) at the U.S. Embassy in Islamabad, Pakistan (collectively, the "State Department" or "Defendants").[1] Plaintiff Akhtar Nadhman Shams, Plaintiff Maria Nadhman Shams, and Plaintiff Y.D.S. (collectively, the "Plaintiffs") opposed the Motion. (ECF No. 18; the "Opposition".) Defendants replied. (ECF No. 19.)

---

[1] Pursuant to Federal Rule of Civil Procedure 25, Secretary of State Marco Rubio is substituted for Secretary Antony Blinken and Natalie Baker, as Chargé d'Affaires *ad interim* (diplomat in the absence of an ambassador), is substituted for Ambassador Donald Blome. Fed. R. Civ. P. 25(d). The Court directs the Clerk to update the docket sheet to reflect this change.

The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

I.    BACKGROUND

The issues presented here are not new to this Court or to many courts around the country. This action involves a dispute pertaining to Plaintiff Akhtar's I-140 visa petition for "Alien Worker." (ECF No. 1 ¶ 10.) In addition to an employment-based immigrant visa, Plaintiffs seek familial derivative visas.[2] (*Id.*) The State Department interviewed Plaintiffs on March 22, 2023 in connection with their visa application. (*Id.* ¶ 14.) Following that interview, the consular officer requested additional information, and Plaintiffs responded with their Form DS-5535, a supplemental questionnaire for visa applicants. (*Id.*) Since then, Plaintiffs claim the agency "refused to issue a final decision on Plaintiffs' visa applications" despite their "repeated attempts to obtain a decision in this matter without involving this honorable Court." (*Id.* ¶¶ 15, 16.)

A review of the Department of State's publicly available Visa Status Check website indicates that "[a] U.S. consular officer has adjudicated and refused [the] visa application" numbered ISL2021623003. (*See* ECF No. 17 at 4 n.3.); *Consular Electronic Application Center*, U.S. Dep't of State, https://ceac.state.gov/CEACStatTracker/Status.aspx?App=IV (last accessed April 2, 2025). The Court takes judicial notice of this publicly available refusal as depicted in Figure 1 below. *See Vanderlok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (taking judicial notice of information available on a publicly accessible government website).[3]

---

[2] Plaintiffs here include Akhtar, the I-140 visa applicant; his wife Maria; and their minor child referred to under the initials Y.D.S.

[3] Defendants, in their pre-motion letter to the Court, assert that "on or about May 6, 2024, Plaintiffs' visa applications were refused." (ECF No. 14 at 1.) Defendants refer to the Department of State's Visa Status


```
                            U.S. Department of State
                         IMMIGRANT VISA APPLICATION
                                  Refused

Immigrant Visa Case Number: ISL2021623003 01 ISL
Case Created:            03-May-2021
Case Last Updated:       19-Feb-2025


A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular
officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain
refused while undergoing such processing. You will receive another adjudication once such processing is complete. Please be advised
that the processing time varies and that you will be contacted if additional information is needed. For more information, please visit
TRAVEL.STATE.GOV or the website for the Embassy or Consulate at which you made your visa application.
For more information, please visit TRAVEL.STATE.GOV.
```

Figure 1

Plaintiffs bring two claims for essentially the same relief. The first is an Administrative Procedure Act ("APA") claim based on Defendants' purported failure to perform its "non-discretionary duty to conclude agency matters," 5 U.S.C. § 555(b). (ECF No. 1 ¶¶ 18–19.) Plaintiffs contend that their "applications have been in administrative processing beyond a reasonable time period for completing administrative processing of their visa applications." (*Id.* ¶ 22.) As part of their requested relief, Plaintiffs ask the Court to, *inter alia*, "issue a writ of mandamus compelling Defendants to promptly complete all administrative processing within sixty days" and "a writ of mandamus compelling Defendants to issue immigrant visa to [Plaintiffs]." (*Id.* at 7.) Plaintiffs bring their second claim under the Due Process Clause of the Fifth Amendment to the United States Constitution for the same alleged failure to act on their visa applications. (*Id.* ¶ 22.)[4]

---

check website in support of this refusal, but there is nothing on the website indicating that May 6, 2024 was the date of refusal.

[4] Consistent with other decisions in this District, the Court considers Plaintiffs' Mandamus Act claim to be subsumed by their APA claim. *See, e.g.*, *Bokhari v. Bitter*, No. 23-1947, 2024 WL 244211, at *1 (D.N.J. Jan. 22, 2024) ("Mandamus Act claim is subsumed by his APA claim" and thus "duplicative"); *see also Azam v. Bitter*, No. 23-4137, 2024 WL 912516, at *4 (D.N.J. Mar. 4, 2024) ("Where, as here, a plaintiff

Although the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* ("INA"), requires Defendants to review and adjudicate immigrant visa applications, albeit with limited exceptions, they are afforded broad discretion in doing so, particularly with respect to timing. As it relates to timing, the Court has no jurisdiction to compel Defendants to process Plaintiffs' visa applications within a certain period.

In addition to the Court's lack of subject matter jurisdiction, Plaintiffs are without standing to proceed because Defendants' prior refusal of Plaintiffs' immigrant visa application satisfied their legal duty to process the application. This means Plaintiffs have not properly alleged an injury-in-fact or relief that the Court can provide.

Assuming *arguendo* that the Court has subject matter jurisdiction over the Complaint and Plaintiffs have standing, the Court would still be compelled to dismiss this action pursuant to Rule 12(b)(6) because Plaintiff has failed to sufficiently allege that Defendants' delay in processing the visa petition was unreasonable.

Finally, the Due Process Claim under the Fifth Amendment also cannot survive because Plaintiffs have not alleged a legally protected liberty interest.

## II. LEGAL STANDARD

### A. SUBJECT MATTER JURISDICTION

Federal Rule of Civil Procedure 12(b)(1) authorizes a defendant to move to dismiss a complaint for lack of subject matter jurisdiction. As an initial matter, a court must first ascertain whether a Rule 12(b)(1) motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Long v. Se. Pa.*

---

seeks to compel agency action unlawfully withheld or unreasonably delayed, courts treat claims under the APA and Mandamus Act co-extensively.")

*Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted). A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* In a factual challenge, the "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Where, as here, Defendants bring a facial attack of the Court's subject matter jurisdiction, the Court reviews the well-pleaded facts in the complaint in the light most favorable to Plaintiffs. *Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022); *Jamoussian v. Blinken*, No. 21-10980, 2022 WL 538424, at *1 (D.N.J. Feb. 23, 2022) (citing *Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). Because federal courts are courts of limited jurisdiction, there is a rebuttable presumption that a court is without subject matter jurisdiction. *See G. W. v. Ringwood Bd. of Educ.*, 28 F.4th 465, 468 (3d Cir. 2022) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, Plaintiffs must show that this Court has subject matter jurisdiction to survive the Rule 12(b)(1) Motion. *Potter v. Cozen & O'Connor*, 46 F.4th 148, 155 (3d Cir. 2022) (citation omitted).

B.   **FAILURE TO STATE A CLAIM**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

5

(2009). In evaluating the sufficiency of a complaint, the court accepts all the well-pleaded factual allegations as true and draws all reasonable inferences in favor the plaintiff. *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

### III. DISCUSSION

#### A. APA CLAIM

Defendants seek to dismiss Plaintiffs' APA claim for lack of subject matter jurisdiction. (*See* ECF No. 17 at 8.) Because jurisdiction is always a threshold issue, the Court first considers whether Plaintiffs have met their burden of establishing this Court's jurisdiction over their claims. Here, Plaintiffs have not met their burden because the INA does not require immigrant visa applications to be adjudicated within a certain time-frame and Plaintiffs have not alleged that Defendants engaged in any improper behavior, deliberate inaction, or bad faith. Thus, as explained in greater detail below, the Court lacks subject matter jurisdiction over this dispute.

##### 1. Subject Matter Jurisdiction

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, § 701(a) of the APA precludes judicial review when prescribed by the statute or when "agency action is committed to agency discretion by law." *Id.* § 701(a). As the Supreme Court recently noted, the "INA[] does not authorize judicial review of a consular officer's denial of a visa." *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024). This doctrine is known as "consular nonreviewability" and serves to bar judicial review of agency action. *Id.*

However, reviewing agency *inaction* is different. Under § 706(1) of the APA, federal courts "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also id.* § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 64 (2004) (emphasis in original). A court only has subject matter jurisdiction to compel agency action "when the agency is compelled by law to act *within a certain time period*." *Norton*, 542 U.S. at 65; *Azam,* 2024 WL 912516, at *7 (emphasis added) (quoting *Kale v. Mayorkas*, No. 21-08095, 2021 WL 2652124, at *4 (D.N.J. June 28, 2021)). However, even without a deadline set by statute, the Court has jurisdiction if a plaintiff alleges improper behavior, "deliberate inaction[,] or bad faith on the part of the State Department in processing [an] individual visa petition." *See Azam*, 2024 WL 912516, at *8 (citing *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019)).

To establish that a court has jurisdiction under the APA or Mandamus Act for an unreasonably delayed action, a plaintiff must make a two-part showing. *First*, they must identify a mandatory, nondiscretionary duty. *See id.*, at *7 (citing *Norton*, 542 U.S. at 64). *Second,* they must point to "provisions establishing a specific time frame" for adjudicating visa applications. *Id.* (citing *Kale*, 2021 WL 2652124, at *4) (internal quotation omitted).

Defendants argue that "the Department of State has already adjudicated Plaintiffs' visa applications and refused them on March 22, 2023." (ECF No. 17 at 3.) Further, they posit that Plaintiffs have not established any right to reconsideration—"within a certain time frame" or in general. (*See id.*) Plaintiffs contend they are entitled to an adjudication of their visa applications within a reasonable time and other out-of-court efforts to seek same have failed. (*See* ECF No. 18

7

at 17, 21.) They further argue that there are equitable grounds for relief because it has been "over four years since the initial filing in June 2020" and "18 months since the interview took place at the embassy." (*Id.* (emphasis omitted).)

### a. Non-Discretionary Duty

First, the Court must determine whether Defendants have a mandatory, non-discretionary duty to adjudicate a visa application. *See Azam*, 2024 WL 912516, at *7 (citing *Norton*, 542 U.S. at 64). Section 1202(b) of Title 8 provides that "[a]ll immigrant visa applications *shall* be reviewed and adjudicated by a consular officer." § 1202(b) (emphasis added). Under this plain language, Defendants have a mandatory, nondiscretionary duty to adjudicate visa applications. As aptly put by Chief Judge Renée Marie Bumb, U.S.D.J. when referring to this precise language, "[t]hose words mean what they say." *Azam*, 2024 WL 912516, at *6. Like Chief Judge Bumb, the Court finds that the plain language of § 1202 governs. Therefore, § 1202 prescribes a non-discretionary duty requiring that visa applications be "reviewed and adjudicated by a consular official." *Id.* (citing § 1202).

### b. Time to Discharge Duty

Next, the Court turns to whether that duty must be within a certain time-frame. "[N]othing in federal law governing consular officials' . . . adjudication of visa applications imposes a particular deadline." *Jamoussian*, 2022 WL 538424, at *2;" *see also Azam*, 2024 WL 912516, at *7. The prevailing rule in this District is that absent a showing of bad faith, deliberate inaction, or impropriety by Defendants or a law compelling an agency to act within a certain time period, the Court lacks jurisdiction to compel any action by Defendants. *Kale*, 2021 WL 2652124, at *4; *see also Jamoussian*, 2022 WL 538424, at *2 (APA confers jurisdiction to compel an agency to act when the law mandates action within a certain time period); *see also Norton*, 542 U.S. at 64.

"[A]bsent a 'specific time frame for adjudication . . . Congress did not intend to limit the discretion' of the State Department with respect to the time, place, and manner in reviewing and adjudicating visa applications." *Azam*, 2024 WL 912516, at *8 (citation omitted).

Courts in this District have also found the lack of explicit statutory or regulatory time frame within the INA context especially "significant" as the INA does contain time limits for certain other actions. *E.g., Banerjee v. Jaddou*, No. 22-4664, 2023 WL 8068092, at *8 (D.N.J. Nov. 21, 2023) (citing 8 U.S.C. § 1447(b) ("If there is a failure to make a [naturalization] determination under section 1446 of this title before the end of the 120-day period . . .")).

Congress has also conferred great discretion on the Executive Branch in the immigration context. The State Department's discretion to process visa applications on its own timeline and according to its own priorities is a prime example. *See Azam*, 2024 WL 912516, at *8 ("[T]he agency's duty to resolve matters presented to them within a reasonable time must be considered in the context of the wide discretion the State Department retains relating to the time, place, and manner of visa petition adjudication." (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999))).

Plaintiffs here have not alleged anything more than ordinary, albeit perhaps frustrating, garden-variety delays in the immigration process and the adverse effects that flow from them. (*See generally* ECF No. 1.) None of Plaintiff's allegations rise to the level of bad faith, deliberate inaction, or improper behavior. Accordingly, Plaintiffs "cannot use Section 1202(b) to leapfrog the line given the discretion inherent in the visa adjudication process." *Azam*, 2024 WL 912516 at *7 (internal citations omitted).

The parties do not, in fact, dispute the lack of a mandated time-frame for adjudicating visa applications, but rather have different views on what that omission means for the Court's jurisdiction to compel Government action. (*Compare* ECF No. 17 at 3 (Defendants assert "there

9

is no deadline under federal law by which a consular officer must adjudicate a visa application"), *with* ECF No. 18 at 18 (Plaintiffs argue the duty is to "'adjudicate' immigration petitions 'within a reasonable time'" (citation omitted)).) Plaintiffs posit that the Court has subject matter jurisdiction even without a legally mandated time-frame to adjudicate the visa applications. But Plaintiffs—holding the burden to prove subject matter jurisdiction—fail to point to a single case in this Circuit indicating courts have jurisdiction to review the timeliness of Defendants' adjudication of a visa application absent a statutory time-frame. (*See generally* ECF No. 18.) Therefore, the Court cannot find that § 555(b) or § 706(1) of the APA confers jurisdiction on this Court.

In light of the language of the INA and the guidance from courts in this District, this Court concludes that it does not have subject matter jurisdiction to review the reasonableness of any delay in the Government's adjudication decision under Section 1202. *See, e.g., Oladoja v. United States Dep't of State*, No. 24-1143, 2025 WL 880010, at *6 (D.N.J. Mar. 21, 2025). Therefore, the Court dismisses Plaintiffs claims for relief under the APA and the Mandamus Act for lack of subject matter jurisdiction.

    **2.    Justiciability**

Assuming *arguendo* that the Court has subject matter jurisdiction, Plaintiffs lack standing because the Court cannot compel Defendants "to make yet another 'final decision' on [the] already-refused visa application." *See Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *6 (D.C. Cir. July 24, 2024) (per curiam). Section 42.81(a) of Title 22 of the Code of Federal Regulations provides that a "consular officer must issue the visa, [or] refuse the visa under INA 212(a) or 221(g) or other applicable law. . ." 22 C.F.R. § 42.81(a). As alleged here and as indicated

in Figure 1, Plaintiffs' application was placed in "administrative processing," *i.e.*, it was refused pursuant to INA § 221(g). (ECF No. 1 ¶¶ 21, 22; *see* Figure 1.)

Defendants contend that because "Plaintiffs' visa applications have been, and remain refused, Plaintiffs' APA and mandamus claims should be dismissed as moot under Rule 12(b)(1)." (ECF No. 17 at 13.) Defendants assert that Plaintiffs are owed no further adjudication under Section 221(g) of the INA, 8 U.S.C. § 1201(g) now that their visa applications have been refused. (*Id.* at 10–11.) Plaintiffs contend that their applications were never properly adjudicated and thus there are no mootness issues here. (ECF No. 18 at 10.)

Although often confused, "standing and mootness are two distinct justiciability doctrines" with different jurisdictional burdens. *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020); *Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 204 (3d Cir. 2022) ("The difference is not merely one of semantics."). Standing is assessed at the start of the litigation while mootness examines whether there is a live case throughout all stages of the judicial proceeding. *Zuch v. Comm'r of Internal Revenue*, 97 F.4th 81, 93 (3d Cir. 2024); *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022). The distinction is important here because the burden to show standing rests with the plaintiff, while the defendant bears the burden to show that a case is moot. *W. Virginia*, 597 U.S. at 718–19.

The standing inquiry requires a plaintiff to prove that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. Of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023) (citation omitted). Importantly, the injury "must actually exist," *id.*, and the relief requested cannot have a defendant do that "which it has already done." *See Zevallos v. Obama*, 10 F. Supp. 3d 111, 123 (D.D.C. 2014), *aff'd*, 793

F.3d 106 (D.C. Cir. 2015) (dismissing claim under Rule 12(b)(1) when requesting agency to take action it has already taken). Cases are moot when the defendant can show that developments *during* a litigation "eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017). A defendant must overcome a "heavy burden" to show that there is no longer a live case or controversy. *Zuch*, 97 F.4th at 93.

Here, standing is the more appropriate lens through which to view the State Department's challenge. *See Bimbo Bakeries USA, Inc. v. Rubio*, No. 24-5919, 2025 WL 860493, at *5 n.6 (E.D. Pa. Mar. 19, 2025); *see also Ebrahimi v. Blinken*, No. 23-3867, 2024 WL 2020038, at *4 (N.D. Ill. May 3, 2024) (reframing mootness argument as standing when the basis is an event occurring *prior* to the litigation commencing). Therefore, whether Plaintiffs have standing hinges on whether a decision has been rendered on Plaintiffs' visa application. *See Onuchukwu v. Clinton*, No. 10-1490, 2010 WL 3614217, at *2 (D.N.J. Sept. 7, 2010), *aff'd*, 408 F. App'x 558 (3d Cir. 2010) ("As long as the State Department considers the merits of an application for an immigrant visa, this Court may not alter or even review the Department's decision.") (citing *Elhabash v. United States Dept. of State*, No. 09-5847, 2010 WL 1742116, at *2 (D.N.J. April 27, 2010)).

Here, Plaintiffs must prove that they suffered injuries resulting from Defendants' "unreasonable delay" in adjudicating their visa application. (ECF No. 1 ¶¶ 19, 23.) Although framed in terms of declaratory relief (*see id.* at 7), Plaintiffs' requested relief is to compel Defendants to adjudicate Plaintiffs' I-140 visa application. (ECF No. 1 at 7.) For this to be redressable, the relief requested must be within the Court's power. Therefore, standing turns on whether Plaintiffs have shown that Defendants have not fully discharged their mandatory duty to review and adjudicate the visa application pursuant to § 1202. Otherwise, if Defendants have

fulfilled their duties under § 1202, the doctrine of consular nonreviewability precludes any judicial review of an already-refused visa application.[5] Thus, there would be no injury-in-fact or redress available.

Defendants contend that the visa application was already refused under § 1201(g), (ECF No. 17 at 10–15), while Plaintiffs assert this is merely a temporary refusal, (ECF No. 18 at 13, 15). Courts within the Third Circuit have issued instructive rulings on this point. For example, in *Elhabash v. United States Department of State*, a visa application was refused pursuant to INA § 221(g) for further administrative processing and was subject to reconsideration "without submission of another visa application." 2010 WL 1742116, at *1. In that case, the court concluded that it was "without jurisdiction to hear the case because the Embassy has denied [plaintiff's] visa application pursuant to INA § 221(g)" and the recourse was to await reconsideration after administrative processing was complete. *Id.* at *3. In *Meleo v. Blinken*, this Court decided a similar dispute involving a visa application in "administrative processing." No. 23-03495, 2024 WL 4345289, at *6–9 (D.N.J. Sept. 30, 2024). There, the Court found that the plaintiffs had no standing following the refusal of their visa application under INA § 221(g). *Id.* at *9; *see also Denisova v. Mayorkas*, No. 23-01902, 2024 WL 2043664, at *3–4 (W.D. Pa. May 8, 2024) ("The facts of this case directly mirror those present in *Elhabash* . . .[:] the consular officer's action in refusing Mr. Denisov's application constituted a final agency decision" that left no "live case or controversy affecting the parties before the Court.").

---

[5] The doctrine of consular nonreviewability bars courts from reviewing a consular officer's exercise of discretion conferred by Congress, such as whether to deny or grant a visa application. *See Muñoz*, 602 U.S. at 908 ("The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions.").

13

The United States Court of Appeals for the Third Circuit has not addressed whether a refusal under INA § 221(g) for administrative processing fulfills the Government's adjudicatory duty, but the United States Court of Appeals for the District of Columbia has issued such a holding, finding that an application refused and placed in administrative processing is officially refused. *See Karimova*, 2024 WL 3517852, at *3, *5 (finding an application placed in administrative processing does not require a court to compel the Government "to make yet another final decision on [an] already-refused visa application" (internal quotations omitted))[6]; *see also Ekwunife v. U.S. Citizenship & Immigr. Servs.*, No. 23-1720, 2023 WL 8651406, at *3 (E.D. Pa. Dec. 14, 2023) (a court "cannot constitutionally order [the State Department] to do that which it has already done").

Therefore, even if a lack of jurisdiction under the APA and Mandamus Act did not bar Plaintiffs' claims, the Court concludes that Plaintiffs have not sufficiently demonstrated standing and it must dismiss the Complaint.

### 3. Unreasonable Delay

Setting aside the Court's lack of jurisdiction, the Court also finds that Plaintiffs fail to state a claim for unreasonable delay. In assessing the reasonableness of a delay, courts apply the "*TRAC*[7] factors": (i) length of time elapsed since the agency had a duty to act; (ii) the reasonableness of the delay in the context of the statute; (iii) consequences of the agency delay; and (iv) administrative difficulties associated with the delay. *See Azam*, 2024 WL 912516, at *9 (quoting *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir.

---

[6] *Karimova* did not fully settle this issue within the D.C. Circuit. *Compare, e.g., Ibrahim, v. Spera*, No. 23-3563, 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) ("[O]ne cannot read *Karimova* as saying anything other than a 221(g) refusal and placement in administrative processing was a conclusion."), *with e.g., Hajizadeh v. Blinken*, No. 23-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024) ("This court has considered *Karimova* but declines to follow it.").

[7] *Telecommunications Research & Action Center v. Fed. Communications Comm'n*, 750 F.2d 70 (D.C. Cir. 1984).

1998)); *see also Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (setting forth the "TRAC" factors). The Court—in applying the *TRAC* factors in a light most favorable to Plaintiffs—joins other courts in this District in finding that, based on delays of a length similar to this one, an "unreasonable delay" was not sufficiently alleged. *See Azam*, 2024 WL 912516, at *9–10; *see also Jamoussian*, 2022 WL 538424, at *2 (collecting cases and indicating no "bright lines"). For the purposes of this analysis, the Court will consider the delay from the date that Plaintiffs filed their I-140 visa petition (June 26, 2020), (ECF No. 18 at 23), because a delay could only be possible if Defendants had not made a final decision on March 22, 2023.

Plaintiffs' purported delay of almost five years "falls well within the bounds of delays that other courts have found reasonable." *See, e.g., Azam*, 2024 WL 912516, at *10 (finding delays between three and five years not unreasonable); *Jamoussian*, 2022 WL 538424, at *2 ("[D]elays of three to five years are not unreasonable—even before the COVID pandemic hit."); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (citing cases in which even five-to-ten-year delays in the immigration context may be reasonable). Accordingly, the time-delay factor favors Defendants.

The Court next looks to the reasonableness of the delay in the context of the statute authorizing the agency's action. *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123. Adjudications of visa applications are not time limited, and Defendants are entitled to considerable discretion in making immigration-related decisions, including "to set the time, place, and manner of visa application adjudication." *See Azam*, 2024 WL 912516, at *10. Therefore, without timing restrictions, this second factor also favors Defendants.

As for consequences of delay, Plaintiffs allege only that they each reside in Pakistan and that the "uncertainty has caused tremendous hardships." (*See* ECF No. 1 ¶¶ 1, 29.)[8] Regardless, the Court cannot expedite Plaintiffs' visa application over other similarly situated applicants. *See Azam*, 2024 WL 912516, at *11 (citing *Ali v. United States Dep't of State*, 676 F. Supp. 3d 460, 471 (E.D.N.C. 2023)). This factor also favors Defendants.

Finally, with respect to administrative difficulties, the Court—consistent with the wide discretion afforded to Defendants—declines to mandate how Defendants prioritize resources. Therefore, the facts as pled do not state a claim for unreasonable delay under the APA, warranting dismissal under Rule 12(b)(6).[9]

## B.   DUE PROCESS

Plaintiffs' second and final claim, which is brought under the Due Process Clause of the Fifth Amendment, also fails because there is no legally protected interest here. (ECF No. 1 ¶ 27.) Plaintiffs argue that they are entitled to "fundamental fairness in administrative adjudication" and the delay and failure to act put Defendants in violation of the Fifth Amendment's Due Process Clause. (*Id.*)

The Fifth Amendment guarantees that "no person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To state a due process claim, a

---

[8] Attached to the Opposition is the Affidavit of Plaintiff Akhtar Nadhman Shams discussing the hardships he and his family face since filing the subject visa application. (*See* ECF No. 18-1.) However, matters outside of the four corners of the Complaint, such as the Affidavit, cannot be considered on a pending motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *E.g., Dando v. Bimbo Food Bakeries Distribution, LLC*, No. 14-02956, 2014 WL 6991467, at *4 (D.N.J. Dec. 9, 2014) ("The evidence proffered by plaintiff in opposition to defendants' argument go beyond the pleadings and, therefore, cannot be considered in deciding a motion to dismiss.").

[9] Plaintiffs contend that they should get the benefit of discovery before the Court decides whether the alleged delay is unreasonable. (*See* ECF No. 18 at 27.) However, the record alleged in the Complaint is sufficient to decide this matter at this stage. *See, e.g., Mutlu v. Mayorkas*, No. 23-22176, 2024 WL 4117329, at *3 (D.N.J. Sept. 9, 2024).

plaintiff must allege a deprivation of his life, liberty, or property by the government. *See Kerry v. Din*, 576 U.S. 86, 90 (2015). Plaintiffs, as "foreign nationals seeking admission[,] have no constitutional right to entry." *Trump v. Hawaii*, 585 U.S. 667, 703 (2018); *see also Muñoz*, 602 U.S. at 908; *see also Mahmood v. Blinken*, No. 23-1596, 2023 WL 6323796, at *14 (E.D. Pa. Sept. 28, 2023) (finding noncitizens "have no constitutional rights" regarding their visa applications). Therefore, without any legally protected interest alleged, the Fifth Amendment claim fails.[10] *See, e.g., Evans v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011) ("[I]f there is no constitutionally protected interest, our inquiry stops.")

---

[10] Notwithstanding Plaintiffs' lack of constitutional rights as noncitizens, "the Third Circuit has found that even greater delays in adjudication in the immigration context did not amount to due process violations." *Ahmad v. U.S. Citizenship & Immigr. Servs.*, No. 23-3332, 2024 WL 3272832, at *8 (D.N.J. July 2, 2024).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**, and the Complaint is **DISMISSED**. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: April 2, 2025